The final case on our calendar this morning is number 197470, Leslie Lisnitzer v. Howard Zucker. Thank you, your honor. May it please the court, Stephen Wood for the state of New York. The judgment below should be vacated or reversed for either of two reasons. The first is due to class certification because the claims of the only named plaintiff, Mr. Lisnitzer here, are moot now that he has left New York. And because of his own atypical fact, he is not a member of the class nor an adequate and typical class representative. The district court also independently failed to conduct the required rigorous analysis of the class certification factors, instead making only the conclusory statements in pages 14 and 15 of Special Appendix that the Rule 23 factors were satisfied. Second, on the merits, New York's fair hearing process complies with the federal regulatory requirement that the fair hearing process result in final administrative action within 90 days. And that's because applicants like Mr. Lisnitzer here do receive a definitive decision on the issue presented in the administrative appeal that closes out the issue presented by their fair hearing request. That type of decision satisfies the meaning of final administrative action, which has to be understood in context here. In both the federal regulations and the Medicaid manual, that phrase is used to convey the conduct of the fair hearing process and the issuance of their counsel. Counsel, on your first point about class, yeah, it's true that the judge did not say much about Rule 23, but haven't we said in Chabriar v. Smith-Walensky that if the record shows that those are met on their face, we don't require an express discussion? I know that the Fifth Circuit takes a different position, but haven't we said that where it's pretty darn clear, no more is needed, and isn't the size of the class and all the requirements pretty much evident on the record in this case? The answer is no, Judge Calabresi, and I think there are a couple of ways to understand why. I mean, one is that during the bench trial here, which sort of unusually was conducted before the class certification, the court actually did not receive or accept evidence of anything other than Mr. Lismitzer's specific case, and so this was not a situation where a record on the broader class was developed. In addition, the class certification is not obvious here for a couple of reasons, which I'll outline. One is that the class definition here includes a number of applicants, including some who don't suffer the same common injury as Mr. Lismitzer alleges he received. It includes, for instance, individuals who in fact received an eligibility determination from the local district on remand within the 90 days, or who were found to be ineligible, and as we have noted in our brief, there are questions about commonality here, because Medicaid applicants are a diverse class. They have many different reasons for ineligibility, and there are many different things that happen on remand from the fair case. How are they different with respect to getting an answer within 90 days? That is, of course, there may be any number of differences, but how are they different with respect to the issue in this case? Well, I want to start by emphasizing that, as the Supreme Court said in Walmart, the question is whether there's a common injury, not just whether there's a common claim of legal error affecting all of the class members. Here, one of our arguments about Mr. Lismitzer's state typicality shows how there is a meaningful and meaningful difference here. On remand, he had the time and the opportunity to invoke available state procedures to obtain prompt relief from the local district, and did not do so, chose not to do so, and instead filed this federal action. The fact that that was available to him, but not invoked, makes him a different sort of applicant from the normal one. I don't understand. Let me interrupt and say, I don't really understand how this is relevant at all to a legal interpretation of the statute and defining the state's obligations to provide a definitive answer on a prospective basis, to the prospective injunction that requires the state to That is a legal interpretation that affects everyone who may be applying or has applied to Medicaid. There's no damages claim here, looking backwards. This is quite unlike Walmart. This is really forward-looking in every relevant respect, and therefore, the numerosity and the other elements of Rule 23 seem to me satisfied beyond their faith, although the district court obviously could have gone into more detail about them. Why is that understanding incorrect? Well, Judge Carney, even though this isn't a damages class, it's still important for the class members to suffer a cognizable injury here. And I think our argument here is that if somebody either did, in fact, receive a Medicaid eligibility determination within what plaintiff has said is the 90-day period on remand, or as in Mr. Case, could have received it if he had invoked available state procedures, then there is not a violation. Why would that affect the district court's injunction, prospective injunction in any way? It would affect it in a couple of ways. One is that it would require the state to change its procedures for fair hearing, even for individuals who either did or could have received a timely eligibility determination, even under plaintiff's on remand. And that injunctive perspective... Why would it require the state to do anything different if the 90-day limit was complied with already? Well, because on a prospective basis, the state doesn't know ahead of time which decision, when it decides these things in what it deems to be a timely manner, will result in either a finding of ineligibility or a finding from the local district on remand. And so the changes to state procedures have to occur ahead of time on the assumption that they may have to sort of catch any delays on the remand. I think that was part of our argument for the state below about sort of the in-advance changes that have to be met here. But I do want to get to the merits here, because I do think some of this is bound up in a dispute over what the meaning of final administrative action here. And when I was earlier, that that meaning has to be understood in context. The reason is because the regulation here and the Medicaid manual are talking about final administrative action in the fair hearing process. And... Yeah, isn't the manual really... I won't say determinative, but we give deference to it, and it suggests a difference between a determination, which is what is involved here, and that a final determination is needed within 90 days, even if payments and so on are not. Isn't the manual really determinative on this? We think the manual supports the state's position here for the following reasons. One is that the manual's language is consistent with the interpretation that the state has adopted here, which says that a determination is final, again, for purposes of this regulation. One, it resolves the issue that an applicant presents on appeal. It closes out that issue and says to the local district, you must comply with the directions and the findings of this administrative appeal. Now, there is a contrast here. We are not saying that every decision that is issued would be final under that understanding. If what happens instead is that a determination merely remands for the local district to further consider the very issue that was initially presented, such as by conducting further fact-finding, that would not be definitive and final agency action, and we agree that that would not end the 90-day period. The manual recognizes that. The language that the plaintiff here relies on is language that says remanding to the local unit for further consideration is not a substitute for definitive and final agency action. Again, what that means in context is further consideration of the issue that is presented in the local district, the statement of their specific reasons for the denial of Medicaid eligibility. Another way to understand why that is true is because the manual also separately acknowledges that there might be corrective action ordered in an administrative decision and puts Medicaid eligibility, including the reinstatement of eligibility, in the category of corrective action. Doesn't it make sense to say that these people ought to know what their rights are within 90 days, even if, for any number of reasons, payments need not be made within 90 days? Doesn't it make sense that this law is asking the state at least to be able to make that in the way administrative law works? Well, it could be written in that way, and our argument is that it is not. I think there's a couple of reasons why. One is that the fair sharing process is set up as an appeal process. It is set up as a process where, on the one hand, the local district is required to give specific reasons, and then on appeal, in the administrative appeal, those specific reasons are evaluated on the record that was district. So, there are sort of constraints on the appeal process that make it sensible to have the final action here be determined by the decision on the appeal. Counselor, this is Judge Newman. Can the hearing officer determine eligibility? There is a question here about whether, under our state plan, OTDA, which is the agency that has delegated hearing responsibility, is able to issue final eligibility determinations. I will note the United States has not declined to comment on that particular feature of our state plan. There was an ALJ who said that was not so. Well, I do want to answer it in this way, though, which is, I think, as a practical matter, it is often not feasible for the ALJ or for the state agency to be making that eligibility determination. That is because it is often the case that eligibility, which is a further determination from the issue that is on appeal, will require either further fact-finding or further factual submissions that are either not available to the ALJ or not easily accessible. Well, that is true in this case, isn't it, because they would have to determine whether the excess income regulation was complied with, was satisfied. That is correct. In this case, the hearing officer could not determine eligibility. Is that correct? That is correct. It is also because of the directive here that you are referring to. The final administrative determination, you derive that from the timely hearing decision. Is that right? 4301-244? Yes, that is right. That is the one that has the 90-day and has this phrase, final administrative action. That is correct. What is the relationship between that regulation and the one called determination of eligibility, which has a 45-day time period? The relationship between the two is that, at least in New York, which bifurcates the decision-making process, the 40-day deadline applies to the local district's determination of eligibility. Marked from when? Marked from the application. Then the 90-day deadline refers to the state agency's resolution of the fair hearing. That deadline is marked from the request for a fair hearing. There are different times where the deadlines are triggered. They refer to different actors in the New York system and satisfy different purposes. Is the 45-day period suspended when there is an administrative appeal? I think the way to answer that is that the district has to issue a determination within the 45 days. Once that is done, whether it is positive or negative, and an appeal is filed, then the 90-day deadline for the fair hearing is triggered. Initial denial is satisfied with the 45-day rule? Correct. It is satisfied or should be satisfied before the fair hearing. All right. Now, the judgment in this case refers to the regulation on corrective action. The last part says fails to direct final and definitive corrective action. That is yet a third regulation, right? That is correct. That is correct. Is that – can you help me understand what that clause is doing in the judgment? My understanding – this is one of our objections here. That clause is referring to a separate provision of the Medicaid process that this court in Shackness already recognized is not part of the 90-day deadline for final administrative action. Under the 431.244. That defines the – the judgment. That determines the scope of the judgment, does it not? It does. It does. And I think that is the objection that we raised to this below, was that, again, this court in Shackness did not – in some ways did not directly address every aspect of the judgment. But at least with respect to the question of whether corrective action falls within the 90-day deadline, it did address that specifically. And we have a further argument – And that determines the class. That defines the class. That is correct. And it determines the state's observations going forward as well, based upon paragraph two and three of the final judgment and injunction here. Do we know how many – how many people are in this class? Well, we do not know the exact numbers here. One of the burdens here is that the state does not code for the specific type of fair hearing decision that is sort of encompassed by this language, sort of the language that you were referring to just now. And so we can reach some, you know, rough understandings of those numbers, but ultimately, the determination of the class is going to have to require a fairly case-by-case review with individual fair hearing decisions. How is it possible to know – I guess this is perhaps directed to your adversary, but I'll ask you. How is it possible to know whether the numerosity component has been satisfied? We agree. I mean, we think it has not been established here, or it's not at least found by the district court with record evidence. And there is a serious question about how that number will be determined. Now, after the – there were two steps to the administrative review process. Is that correct? A hearing officer and then an administrative appeal within the state agency? I believe there's a sharing officer, and then the final – which makes a recommendation, and then the final determination is made by the agency. Yes. I think she said she – it was up to her supervisor. That's the next level of review. Is that right? In this case – I'm just pausing, because in this case, it's not necessarily a review. The hearing officer's recommendations have to be confirmed at the final level here. And I do want to draw a distinction. You're distinguishing between a confirmation and a review? It is reviewed, in the sense that the final decision does look at the recommendation. After the supervisor reviewed, and they told the local agency that they were wrong to reject the excess income regulation, that was two days before the 90-day period ended. Is that right? Yes. That was 88 days. Although, there was a 13-day adjournment that Mr. Loosmither had requested that, for purposes of this timeline, counts against – sort of told the deadline. So, it's really 75 days under this period. All right. Then why didn't the local agency determine eligibility during those, as you put it, 15 days, 13 plus two? I don't know that we know the answer to that question, or I certainly do not. And that was a failure on the local district's part. That was corrected when Mr. Loosmither finally flagged the issue with the compliance unit, and the compliance unit reached out to the local district and basically demanded compliance with the order. And that compliance occurred within days of both the complaint that was filed some eight months later and – But he didn't do that until the end of the 90-day period. Is that right? Correct. He didn't do so until many months later, after filing the federal lawsuit. So, he could have asked for compliance as soon as the matter got back to the local agency. That's correct. In fact, the transmittal notice – this is on the last page of the record – the transmittal notice recommends that people contact the compliance unit if they haven't heard from the local district within 10 days. Those are the state procedures that we've been referring to in our brief. And I think, as Mr. Loosmither's own example shows, that when that complaint is raised, the process is set up to be a timely – what the fair hearing decision requires, which is to comply immediately with the directives or as soon as possible with the directives of the state agency. Okay. Thank you. Mr. Wu, your time has expired. Why don't you just take a moment to wrap up, and then you'll have several minutes of rebuttal. Thank you. I'll just say something very briefly, which is I think part of what this discussion demonstrates is that the state does have available mechanisms to ensure prompt resolution of these matters on remand. Our argument is simply that the 90-day deadline here is not sort of the sole means of accomplishing that objective. Thank you. Thank you very much. Mr. Ballmark. Counsel? Hi, Paula. Judge, the mute button was still on. Oh, that's okay. That's okay. Sorry. This is Peter Ballmark, appearing for Plaintiff Repelli Loosmith, sir. Mr. Wu began with class certification, and I know I have limited time, but I just want to take a minute or two on that before going to the merits. At page 14 of his findings, Judge Wexler did favorably reference each statutory prerequisite and concluded that the class should be certified, but the conclusion was preceded by 47 paragraphs of fact-binding with connective citations of specific federal laws and regulations, multiple trial exhibits gleaned from 994 pages of documents that were produced for trial, and deposition and trial testimony. He noted in his findings that the class motion had been fully briefed and deferred consideration of it until after trial. Judge Calabresi earlier mentioned the Shariar case. Just a specific quote from there, if I may. It is not required that district court make express findings on each requirement where the basis for the ruling is obvious from context. We will not reverse class certification simply because the district court did not... How is numerosity obvious? Your Honor, in the class action complaint, there was FOIL data from the state that was appended to it, indicating a class size between 2008 and 2010 of approximately 1700, and there were subsequent FOIL disclosures again from the state identifying as many as 21,000 class members by December of 2018. That would be the lower court docket 123-2. As we understand it in this circuit, Judge, 40 or more members suffices for numerosity purposes. At one point, the state was concerned that identifying class members as part of an implementation plan... Did the district judge make any finding that those numbers were to do? Well, he had the record before him, including the data that was provided. I understand, but it usually isn't enough to say, well, there are a lot of people out there. There have got to be people who are within the class as I'm defining it. Yes. And you just told me he didn't do that. Well, he didn't put the numbers in and he didn't make that specific conclusion, but it can certainly be drawn by inference from the prior 14 pages of his findings and from the record as a whole. The judgment begins, a class is certified as follows, all past, present, and future Medicaid appellants. Is that word correct or should it be applicants? Appellants, Your Honor, because this would include those whose applications are denied or recipients whose benefits were reduced. So perhaps the better word might be claimants, which would seem to encompass both terms. Well, maybe it is the better word, but this is the word we're stuck with. And it wasn't clear to me, does he mean appellants to the court when they're denied or people who want a fair hearing procedure or people who want an appellate review after the fair hearing? Very odd word to put in when neither you nor I know what it means. Your Honor, the word would most clearly mean an appellant seeking a fair hearing review of its lower agency determination pertaining to either. And does not mean someone who's seeking the second step review after the hearing officer has said no? No. Your Honor, just to be clarified, because I noted this from your earlier question, there was some discussion in the state papers about two different forms of administrative appeal. We're talking now about a direct state appeal where the hearing officer is an officer of the state, makes a recommendation to the state hearing authority. We're not talking about a local evidentiary hearing scenario, which only applies in one state in the union anyway. I understand. This is a state hearing. Yes. And the appellant. And there is a second level of review up to the supervisor. Is that right? Actually, the hearing officer under the state system merely makes a recommended decision that then has to be confirmed or certified by a supervising hearing officer, a designee of the commission of the State Department of Health. It goes up one level. It goes, all of them do. The hearing officer does not have the ability one way or the other to render a final decision. That's left to the hearing, the state's hearing authority, which in this case. So I come back to the first question. Yes. Definition of the class does appellant mean someone who wants a hearing officer or does it mean someone who goes from a hearing officer at one level? It means, Your Honor, anybody who requests of New York State a final determination on a local denial of eligibility. It's an appellant is one who asks for a hearing. I'm sorry. I say appellant is a very funny word to cover that long phrase. You just gave me an answer. Your Honor, I don't have the New York Social Services law in front of me to define these terms, but I've been doing fair hearings for 30 years and the term appellant is colloquially or perhaps even more formally defined to include someone requesting a fair hearing. All right. So if it means someone requesting a fair hearing. Yeah. Let's move on to the last clause that says fails to direct final and definitive corrective action. Yes, that clause. Is that part of the is that properly part of the class definition? It certainly is, because what we want is an eligibility determination, which is a form of corrective action. In other words, as it is now, the eligibility is a form of corrective action. Is that what you just said? Well, again, I haven't gotten to the merit yet, Your Honor, but it's certainly our position in the state and the position of the Department of Health and Human that a fair hearing decision that does not render a definitive and final eligibility determination is not a final administrative action as the federal regulation requires. So the heart of our case is that simply remanding the matter back to the local district does not satisfy the regulatory requirements set forth in 42 CFR 431-244 for final administrative action. It is simply a circular process. What does that have to do with corrective action? Corrective action is when there's been some mistake as to eligibility in the calculation. Yes. So the corrective action, Your Honor, in this context would be that a precise directive to the local agency to open the case, which, by the way, in Shackney's, this court made very clear that the hearing decision needs to be rendered within 90 days. And we have no problem with that. We agree completely. But the corrective action, the implementation of the decision, the actual opening of the case, that's what we're talking about now. And the corrective action can certainly take place in terms of implementing the eligibility determination after the 90th day. I just want to say I'm going to give you a few minutes extra time. We kept Mr. Wu for extra time as well. And it's the end of the morning. So, you know, don't feel too pressed. I'll give you a couple extra minutes. All right. I have my stopwatch in front of me, Your Honor. I already feel pressed. But thank you. I can hear that you were breathing fast. So please take a few extra minutes. Thank you very much. I do appreciate it. I would like to touch upon the merits, if I may. And, you know, Mr. Wu talked about interpreting all of these rules and regulations in context. And I guess I want to begin, you know, with a very simple and straightforward context, if you will. The need for a prompt resolution of eligibility is apparent from the nature of this program. I mean, for a Medicaid claimant, they may have waited as long as 240 days to apply for Medicaid benefits, to request a fair hearing pertaining to their denial, and to finally then get a fair hearing decision within the 90 days that Shaq needs a lot. At the end of 240 days, I think the claimant would rightfully expect that by then his or her eligibility would be conclusively determined one way or the other. And that expectation is fully supported by the text of the Medicaid statute. How could it be determined conclusively at the hearing officer level when there hadn't been a determination of whether he qualifies for the excess income exception? Your Honor, follow exactly what this hearing officer did. And I think it answers your question. Hearing officer Ezeki realized that she needed further input from the local district. And she had an interlocutory remand, not terminating the hearing by remand, at least initially, but on an interlocutory basis, sending that question back to the local agency in order for that local agency to answer that question. And then... All right. Did she violate federal law when she did that? She didn't violate federal law when she did that. We claimed the federal right to a final decision was violated when she then turned around and terminated the hearing outright and remanded the question of eligibility back to the local district. At that point, she violated... He couldn't make the determination of eligibility herself for lack of any basis to know whether he had an error to send it back. Then the ball was in the court of the local agency to proceed to determine, does he qualify under the excess income? Your Honor, it wasn't an error for her to send it back on an interlocutory basis without terminating the hearing. In other words, she calls an adjournment, which is what she did. The matter then goes back to the local district with a very simple issue. Does this particular administrative directive resolve whether or not this man qualifies or not? The locality refused to make that determination. And at that point, when they came back and said, look, we did not apply the directive, they even asked the hearing officer to render an eligibility determination. And rather than rendering it, rather than looking at that directive and applying it herself, she terminated the hearing with a remand that left Mr. Lissitzer exactly where he was 240 days before. That can't possibly be what the federal regulation requires. Why go to the local agency and say, you've been told by the hearing officer you must apply this excess income regulation. Here are my medical bills. They exceed by excess income. Go ahead and find me eligible. I'm sorry, Judge, I didn't get the context of your question. Is that something that you said? You say the hearing officer made a mistake. First, I thought you said she didn't violate federal law. Now you're saying she made a mistake by sending it back. Is that right? Your Honor, she did violate federal law when she sent it back and terminated the hearing. A dispositional remand is a violation of federal law from our point of view. She terminated the appeal, which was taken on the issue of whether the excess income regulation applies. She answered that question definitively, did she not? Your Honor, the appellant did not request a hearing to see whether or not the reason for his specific denial was right or wrong. He wanted to know whether the local agency's action was right or wrong, and the action was a denial of eligibility. The action was wrong because they didn't consider the excess income to break those apart. He didn't say you're wrong for seven reasons. He said you're wrong for one reason. Yes. He said you're correct. They need to do exactly what you want them to do. Your Honor, it's our position that the state had the obligation to render an eligibility determination within those 90 days, not simply take it back to the local history. How could they do that if they don't have the data on whether he qualifies for the very exception he's asserting? Your Honor, they wrote the data. It's an administrative directive that the state itself wrote. No, but it turns on his facts. Yes, it does. What is his excess income, and what are his bills? Yes, and that was part of the fair hearing record that the commissioner's representative had an opportunity to review, but they simply refused to make a determination of his eligibility, even though they were the directors of the policy. Why did they have to do that? If the issue is does it apply, and she says yes, it does apply, and she sends it back to the local agency, what's wrong with that? Because the local agency did not come back with a determination, and she then refused to make it herself within the 90 days that the federal regulation requires for a final administrative action. So maybe the local agency erred. I was asking you whether she erred. Your Honor, the local agency is an agent of the state. In New York State, it's a single state agency, and at that point, when the local agency refused to act, it was incumbent upon the state to do so with its own policy directive. It had the information it needed, but rather than rendering a final eligibility determination, they terminated his hearing outright and remanded it. Judge Zickey went in the right direction with the interlocutory adjournment so that the local agency could look at this again, but when the local agency, for whatever reason, refused to look at it again, they themselves asked the hearing officer to render an eligibility determination, and even then, she opted to terminate the hearing outright, leaving Mr. Lisnitzer exactly where he started from. And in terms of his right to render a compliance complaint, what would the compliance complaint have done? First of all, just to correct the record, because the briefs were incorrect in this respect as well, Mr. Lisnitzer never, never requested a complaint or filed a complaint with the state. I actually alerted state council after several months that nothing had been done in terms of the redetermination by the locality, and we filed our federal action a few days after the fair hearing decision. There was no official complaint to the compliance unit of the state, and why would that have made any sense anyway? Because the compliance unit would have only been required then to hurriedly reexamine his eligibility, a thing they refused to do during the term of the hearing itself. So, both were in the way- Mr. Baldwin, go ahead, if you have another question. Was Ms. Butts incorrect? She's from the state, right? She's a state witness? Yes. Was she incorrect when she said at JA 561, the hearing officer cannot determine eligibility, only the local agency can? I think that that is absolutely incorrect. I think it's incumbent upon the state that it has to ultimately decide. Your Honor, every time the state issues a fair hearing decision, affirming a local denial, that is an eligibility determination. It's only an eligibility determination in the negative. This lawsuit is attempting to get the state to act in an even-handed manner, where applying the eligibility criteria the state itself devised in its own regulations, as authors of those regulations, it should be in a position to apply them. And this- Mr. Baldwin, why don't you just wrap that up? Well, I think that is- Take a minute, okay? Thank you, Your Honor. All right, very good. I'll go with the briefs and I'll last some time for HHS to have a say. All right, very good. Thank you very much for your argument. Mr. Yellen. Good morning, Your Honor. May it please the Court, I'm Louis Yellen from the Department of Justice. I'm here today on behalf of the United States. Mr. Yellen, I'm having a little difficulty hearing you. There's some, like, interference. Could you speak as clearly as you can and loudly into your microphone? Yes, Your Honor. Is this any better? A little bit. Go ahead. Let me see if I can change it one more time still. Judge Calabresi, Judge Newman, are you having the same experience I am? I was saying- Yeah, we're having difficulty. How about now, Your Honor? Is this better? That's better. Yes. Okay, super. Thank you, Your Honors. We appreciate the time that the Court has given the United States and its views. I'd like to start, if I might, in responding to some of the issues that Judge Newman raised. The issue in this case isn't whether the state made a mistake by remanding the matter to the local unit for further consideration or not because- That's not the issue. The state is telling us that was the major error. Let me, if I might, Your Honors, I'll explain. It's not the question in itself whether the remand was permissible or not. It's whether the state as a whole issued a final determination on eligibility within the 90-day deadline that the regulation requires. A state has a fair amount of discretion- When you say the state as a whole, you mean regardless of what level, including the local agency. Is that what you mean? The fair hearing itself, which is attributable to the state, has to make a final and definitive determination of eligibility within 90 days. The state- Why is it not the local agency, which the state witness said is the only one that can determine eligibility? Your Honor, a couple points on that. If the state agency, if the local agency makes an eligibility determination, that's fine. That resolves the matter. If the state, local agency doesn't, the fair hearing itself within 90 days has to result in a final determination of eligibility, not a discrete issue that affects eligibility, but a final determination of eligibility. I'd like to emphasize- When the hearing officer says, I've got an issue before me, whether the excess limits apply, excess income applies, and he says, yes, the appellant is right, and he then tells the agent, the local agency, which normally determines eligibility, go ahead and see if he qualifies under the excess income regulation. What's wrong with that? There's nothing wrong with that as long as a final and conclusive determination of eligibility is made within 90 days. That is a key- The only thing wrong here is that the local agency, which has 17 days to act, didn't do it. But that doesn't implicate the entire illegality of the state's hearing officer procedure. That's not correct, Your Honor, for the following reason. The statute itself attributes responsibility for the implementation of the Medicaid statute to a single state agency. The state cannot carve up the responsibility by saying this particular sub-entity of the state has responsibility for this, and that particular sub-entity- Counsel, may I- What you are saying is that as far as this statute is concerned, you don't care how the state sets itself up. It can set itself up one way or another way or another way. But however they set themselves up, they have a duty to determine eligibility within 90 days. Then say, hey, we can't do it. They can't do that because the law requires them to set up a structure that allows them to give that answer within 90 days. Is that your argument? That is our argument, Your Honor. And our brief, and I'm happy to go over some of what I think are the most persuasive reasons, it explicates in more length why the regulation is best understood as requiring a conclusive eligibility determination within that 90-day period. As we have mentioned, the text, the drafting history, especially, and basic administrative law principles suggest that an administrative decision is not final unless it makes a conclusive determination of the key right at issue. And here, the key right at issue is eligibility. If I might- Well, wait a minute. That eligibility is always the ultimate issue. The guy wants to get paid. But the issue- That's exactly right, Your Honor. And that's what constitutes- Was not getting paid. It was whether the excess income thing applied to him. No, but Your Honor, that's a sub-question that has to be resolved as part of the state's ultimate eligibility determination. And the question is whether the fair hearing decision regulation requires the state at the end of that 90 days to give an up or down decision about eligibility. The answer is, yes, it does. There may be subsidiary questions that need to be resolved, but it's the state's responsibility. And does federal law care whether that ultimate decision is made by the hearing officer or her superior or the local agency upon renounce? Does federal law speak to that at all? It cares only in the following sense, Your Honor. The state cannot say, well, we remanded the matter to the local hearing officer. The local hearing officer denied again the claim. And now it has to go back up to the state fair hearing process. That whole process, the conclusion of the state fair hearing process has to be completed within 90 days. If the local hearing officer determines that the claimant is eligible, that will end the matter. It won't need to be a fair hearing. But if the local hearing officer concludes that the claimant is not eligible and it has to go back up on a fair hearing, that whole process still has to be done within 90 days. We have no idea if that would have happened here. On September 6th, it was sent back to the agency and told to make a decision under 87 ADM. And at that point, there was time for the local agency to act. What's wrong with that? The local agency did not act conclusively within the 90-day period. It was at that point. I beg your pardon, Your Honor. Did the plaintiff ask them to? Did the plaintiff say to the local agency, you got the decision back. I'm right. You got to use ADM, 87 ADM. Let's get on with it. With respect, Your Honor, it's not the claimant's responsibility to ask for that. It's a requirement of federal law that the state provide an up or down decision within 90 days. Let's assume the local agency is at fault. They had 17 days to act and they didn't. Why on earth would there be a class action that has a federal court regulating what a hearing officer at the state level should do when the fault is with the local agency for not acting within 17 days as they should have? So, I'd like to make two points in response to that. Go ahead. Judge Newman, maybe you could replace your... Try again. ...repeat your question. Yeah, yeah. Judge Calabresi, can you hear all right? Judge Calabresi? In a case where... I want to make sure that Judge Calab... Excuse me, Judge Newman. I want to make sure Judge Calabresi is on the line. And Mr. Yellen, would you mind responding? Okay. So, let's pause for a minute and let Judge Calabresi dial back in. All right. We'll regroup. Mr. White, you're calling him? Yes, I am, Your Honor. Thank you very much. Am I still on? You are still on with me. Mr. Yellen, are you there? Yes, Your Honor. Yeah, I got another... And Mr. Wu will have rebuttal following. But we'll ask Judge Newman to repeat his question once we have Judge Calabresi back with us. I tried twice and said I was unable to reach him, so the judge may be calling in on his own. Let me give him a few minutes to try again. All right. Very good. Thank you, Mr. White. No problem. I got cut off again. I'm back in. Very good. Sorry for your difficulties, Judge Calabresi. Judge Newman, would you like to try again on that question? All right. I'm trying to understand why, in a case where a state hearing officer correctly ruled on the issue before her and sent it back to a local agency, which had 17 days to do the specific fact-finding on whether 87 ADM applied and determine the amount of money, why that failure on the part of the local agency should give rise to federal supervision of a decree concerning hearing officers? And I have two responses that I'd like to make, Judge Newman. The first is, as we were in our prior back and forth, the state cannot carve up its responsibility. Under 42 U.S.C. 1396a sub a 5, a state is responsible for identifying a single state agency to administer or supervise the administration of a Medicaid plan. Any action by any component of the state is attributable to the state as a whole. So the point that the United States would make here is, the state has some discretion about remanding for fact-finding if it needs to, but the ultimate decision about eligibility still needs to be completed within 90 days, and that was not done here. As to the specific issue about class certification, as your Honor knows, the United States has not taken a position, and I can't speak to that precise issue. But what I would like to emphasize is that New York has set up a system such that it is supposed to, under its own policy, at JA-658, its local units are supposed to address any reason for the action that it has taken. And so, if there is a- Counsel, counsel, counsel, if I may, is your position that it is possible that this particular claim was wrongly put because it focused on the action of the hearing officer, and therefore was not a valid claim, could be said not to be a valid claim, but that what you want to be clear is that we must not say that a class action would not lie if the point of a class action was to get a declaration that the state must act within 90 days in determining eligibility? That is, that there may be errors in how this class action was brought, but that that must not be done in a way that undercuts what is the federal interest, according to you, that an eligibility decision must be given within 90 days. Do I have you right? I would make a slight tweak to what your Honor said. United States has taken no position whatsoever about the propriety of the class action here. We do take a position on the merits that final eligibility determinations should be made, must be made, under federal law, under the Fair Hearings Regulation, within 90 days. A state may structure its procedures as it chooses within the limits of that federal law. And as our brief explains, we've got all of the tools of interpretation of that regulation univocally lead to the conclusion that a conclusive determination of eligibility must be made within 90 days. If a state does not make that determination within 90 days, it has acted inconsistent with federal law, regardless of what its own state regulations require or state procedures require. In this case, New York has... I've got to turn it off again. Yeah, no. You're there? Are you there? Yeah, we're here. We're here. Yes. Okay. In this case... Another way, Mr. Yellin, so another, I'm just thinking that another way of proceeding here then would have been to issue a declaratory judgment interpreting the statute and regulations to require a determination by a state of eligibility or non-eligibility, a definitive determination within 90 days. However, the state chooses to structure that administratively. That would cut off the concern that the plaintiff has raised of the endless feedback loop, where you go back to the local agency, come back to the state hearing officer, and they're making the recommendation to a higher up level that then sends it back to the local agency, or you can just be caught in that without end. But the state then clearly bears an obligation to render an applicant a definitive determination within 90 days. And then the implementation of that can be determined depending upon how large a class is effective and all the particularities within the state. But that's where the government, the federal government disagrees with the state's position about the nature of the obligation imposed by the statute. Is that... Your Honor, that would be an outcome that would reflect the federal government's interest in this matter, and it would accurately reflect the position of the federal government on the merits of the question here. That is, what is it that the state must do within the applicable time period? Yes, Your Honor. Let me try it a different way, if I may. If in this case, after the hearing officer made the decision she made, and her supervisor approved it, and she sent it back, and there were 17 days left, if the local agency right then had said, oh, okay, we're gonna take a look tomorrow, does he qualify for 87 ADM, and we find that he does, and we give him the money, we make an eligibility finding, does that comply with federal law? Yes, Your Honor, because that would have been a determination... Well, this judgment says if that had happened, they'd be in contempt, because they're enjoined from doing what I just spelled out to you. They can't do that. They have to do it at the hearing officer level. Your Honor, with respect, again, the question is, to whom is attributed the decision? If the eligibility decision is made on remand, that is attributed to the state itself. And if the case were not definitively remanded, that is, if the hearing officer, as counsel pointed out, had remanded the matter for a determination while keeping the hearing open, that would have constituted a decision of the hearing of the state at the fair hearing level. In the scenario I gave you, where they sent it back, and the local agency said, okay, you get the money, you're eligible, you said that would comply, yes? Your Honor, yes, it would comply. The question, however, is... And am I right? It would not comply with Paragraph 3 of the judgment, which enjoins them from doing that. I'm sorry, Your Honor, pulling up Paragraph 3 right now. I'll read it. Defendants are enjoined from conducting fair hearings, that's not local eligibility, fair hearings that result in a decision remanding the matter back to the local agency without rendering a final determination based on the fair record. But you just told me if they sent it back within 90 days and the local agency found him eligible, that would be okay. Your Honor, I think there's a certain amount of ambiguity in the provision that you just read. I think if the fair hearing officer at the state level said there's an important factual question that needs to be resolved by the local unit, I'm remanding it, keeping the case open at the state level, and remanding it for consideration of the local unit to address that matter. And if the local unit makes an eligibility determination, that ends the matter. I don't believe that that would be inconsistent with the provision that you just read. What I understand that provision to say is that a state hearing officer may not definitively remand a case that is concluding the fair hearing, such that a claimant would be in jeopardy that if an adverse decision were made at the local level, the claimant would have to apply for a new fair hearing, which under New York's understanding, would restart the 90-day clock. That's what the district court found was problematic, and that, I believe, is the best reading of that particular provision. I don't think the district court gave a... Well, then if the federal court for you, as the U.S., wants to make sure that eligibility is determined within 90 days, why don't we have a judgment that says that? That's not what this judgment says at all. Well, but isn't the question then, if there is an ambiguity in the judgment below, aren't we able to do a Jacobson remand to make that judgment clear and do what is needed if we were to agree with the government that eligibility within 90 days should be determined? If the problem is the nature of the judgment that was given, that it isn't clear, haven't we got means of making that clear? If that question is to me, Judge Calabresi... Yes, I mean, are you... I would encourage... Would you be comfortable with our sending this back to the judge on what we call a Jacobson remand to make clear that this judgment means what you say it means as against what Judge Newman fears that it means? Let me interject. I think Judge Wexler has died, of course, and Judge Bianco picked up this matter for purposes of entering a final judgment. So there is a little bit of a barrier there, though, obviously, we could remand for further proceedings to clarify the order of someone will need to implement. I mean, if we were to affirm, someone would need to implement it. Also, I would want to hear, I think, from Mr. Luznitser's counsel as well, and then we'll hear from the state about this. I would point out that later in paragraph three, the reference is still to a 90-day deadline to render a final determination of eligibility as being the operative concept there, though, obviously, there are the ambiguities that Judge Newman has pointed out. So I think that we may have several different procedural options going forward. Mr. Volmer, are you on the phone still, I assume? I am, Your Honor, yes. I wondered if you could answer the question that Judges Newman and Calabresi had just put about whether you would oppose a remand of some kind to the district court level to clarify the meaning of paragraph three and other aspects of the order. Is that something you would have a problem with? It took about 10 months of negotiations to solidify that language, Your Honor, and it pains me to think that more time would be necessary. But obviously, if it's a concern of the court, and there's an ambiguity that needs rectification, I wouldn't have a problem with that. Again, as you point out, you know… While we're talking about the judgment, I still have, I don't think, gotten an answer to what the last clause is doing there that talks about corrective action. The regulation on corrective action, which is 431.246, says the agency must promptly make corrective payment. I take it you can't correct a payment until there's been an initial payment determination. There has not been an initial determination in this case, so I do not understand what a corrective action clause is doing in the judgment at all. Judge Newman, do you think that we might consider requesting letter briefs from the parties with regard to these questions of interpretation of the judgment? That would be fine with me. Why don't we… I do think we should hear the rebuttal because that will allow me to ask questions of the state about what it means. Yes, yes, indeed, of course. In fact, so why don't we move on to that? Mr. Yellen, I thank you for your argument and Mr. Volmer for your answer to our question.  Please begin. Thank you, Your Honors. Let me address the question on the table, which is we have understood paragraph 3 of this injunction to exactly what Judge Newman was referencing, which is requiring that they are giving decision itself to reach a final eligibility determination. Counsel, counsel, I want an answer to a simple question. Is the state of New York taking the position that it does not need to give the final answer on eligibility within 90 days? That is our interpretation of this regulation. Yes, which is… So, it is good. Two things. We do have a broader… In other words, you don't believe that you have to give an answer as to eligibility within 90 days and that you're not arguing that it's a matter of just fronting us. You just say this law does not require you to make payments within 90 days and it does not require you to make a determination of eligibility within 90 days. The federal government says you don't care how you do it, but you have a duty to do that. So, that is one of the issues. Now, the question is, does this case raise that issue? Right. So, we have two arguments here, just to be clear. We do have the broader argument that says so long as there is final action on the issue on appeal, the 90-day deadline does not apply and there is not a requirement that even further… Even if no determination of eligibility is made. That is the state's position and that is directly counter to the federal government's position. Have I got that right? That is correct. But I do want to make clear the second thing. Even under HHS's interpretation, where they acknowledge that the state would comply with federal law if the local district issued a determination within the 90-day period, this injunction goes further than the federal government's position even then. It is a case solely against the state agency and solely against the fair hearing process, and the injunction requires and directs the fair hearing process to proceed in a certain way. So, I think these are two different ways of understanding, quite different ways of understanding the same conclusion, which is that this injunction is improper. Let me pursue your answer to Judge Calabresi. Are you saying that when a claimant goes for a fair hearing on one issue, as this claimant did, and he gets a favorable answer, favorable on his one issue out of the hearing officer, then the ultimate eligibility determination has no time limit whatsoever? They could take five years? Well, I disagree that there is no time limit. We are saying this 90-day… And what is, okay, good. We've got that there's not an absence of a time limit. So, if the hearing officer determines the one issue on administrative appeal, what is the time limit that kicks in at that point? Well, I would refer to the decision itself on JA-78. No, no, no, just tell me what the time limit is. I think the straight answer is as soon as possible, because that is the language issued in the decision. That is the language from the state directives to the local districts, and that is the reason the compliance unit exists, which is to ensure… Well, fair enough. So, after the hearing officer has ruled in the guy's favor on the issue raised, either at the local level or the hearing officer level, there must be an eligibility decision as soon as possible. That's your position? That's right. And the federal regs contain a similar directive in the corrected action regulation. Excuse me, but is there any… The plaintiff drew the picture of the endless loop of appeals, as to which there was ultimately no deadline imposed. That is, you go back to the local level, you have another hearing, another issue comes up, and then you go back to the hearing officer and who makes a recommendation to your supervisor on another particular narrow issue. They say, we can't decide ultimately eligibility, but you win on this appeal, so we send it back down to the local folks. They make another determination. It has a flaw, and you go up again, potentially without end. And everyone would have been acting as soon as possible to make their determinations. But ultimately, as Judge Newman suggested, yours could pass without a final eligibility determination. Is that correct? Well, I will answer this way, which is that there is no indication that happened in Mr. Lissitzer's case. You could do a lot better than that. Your manual says that the scenario that was just outlined would be unlawful, because the local agency must give all its reasons. But, and, and, Is there a year? That is correct, and is directed to apply these things immediately too. So, and I, and this was the point that I was making at the very end of my opening argument, which is that the state agrees and shares the objective of prompt resolutions of eligibility. But I think the error in the plaintiff's claim and in the injunctions here is to assume that that can only happen with this 90-day deadline, as opposed to the many other ways that the state has, under federal supervision, the state has of ensuring that after a definitive fair hearing decision, that there is prompt implementation of the relief order there, including corrective action like reinstatement of Medicaid eligibility. That is how the state achieves promptness, and that is consistent with what the federal rules require. All right, under your theory, if, if the state agency decides the issue on appeal, administrative appeal, which triggers, as you say, a duty to determine eligibility as soon as possible, but let's say a month goes by and we're now at the 93rd day. What, what is the remedy under state law? I'll ask it this way. Does eligibility kick in automatically if the as-soon-as-possible requirement has been overstepped? Well, there are two answers to that. One is that the commissioner, the DOH commissioner is empowered to use all available means to enforce that. And two, and something that hasn't been mentioned yet, is that many Medicaid benefits are retroactive to the date of application. And so that is a, a, one of the protections against inordinate delays in this process. All right. Thank you very much, Mr. Rue. I think that would conclude. Go ahead. I'm sorry to interrupt you. This is Peter Vollmer again. If I could just have 30 seconds to address a point that Judge Newman just made. You may. With your permission. Judge Newman, as a matter of technical policy, there is an ADM from about 25 years ago that contained a single sentence in it saying that a notice must contain all reasons, all possible reasons, all at once so that every reason could be considered at the fair hearing level. But I just want to direct the court to page 34 of our brief for further consideration, specifically footnote 99, where a supervising hearing officer, James Ryan, testified, and I asked him the question, if a person applies for Medicaid and there are 10 different reasons to deny an application, must the notice denying the application list all 10? His response, no, it's not required to list all 10. Question, if the notice only needs to list one reason, could the local agency issue another notice denying the application of service based on a second reason if the matter is remanded? He said it could. Could the local agency keep issuing denial notices based on a new reason each time? It could. Would the Medicaid applicant have to keep requesting fair hearings as to each successive notice? Yes, that could happen. That's a supervising hearing officer, one of the commissioner's designees that signs off on these fair hearing decisions. So as a technical matter, while the state said 25 years ago to the localities, yeah, your notices have to list all the reasons, as a practical matter, they do not, according to the supervising hearing officer. That's all. Thank you. Thank you, Mr. Volmar. Thank you, everyone. Very well argued, a complicated and interesting case. That concludes our arguments for today.